CASE NO. 14-60779
UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

---

ROBERT SWINDOL, Plaintiff-Appellant

VERSUS

AURORA FLIGHT SCIENCES CORPORATION, Defendant-Appellee

---

ORIGINAL BRIEF OF PLAINTIFF-APPELLANT, ROBERT SWINDOL, FROM
THE NOVEMBER 12, 2014 JUDGMENT IN THE UNITED STATES DISTRICT
COURT, EASTERN DISTRICT OF MISSISSIPPI, ABERDEEN DIVISION,
CIVIL ACTION NO. 1:13-CV-00237, THE HONORABLE SHARION AYCOCK
PRESIDING

---

A CIVIL PROCEEDING

---

Respectfully submitted:

David O. Butts #7642
Renasant Center, Suite 110
398 East Main Street
Tupelo, MS 38804
Tel: (662) 841-1234
Fax: (662) 841-0357
davidbutts@davidbuttslawfirm.com
Appeal Counsel for
Plaintiff-Appellant,
Robert Swindol

(1) USCA5 No. 14-60779, Robert Swindol v. Aurora Flight Sciences Corporation, USDC No. 1:13-CV-00237

(2) The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Robert Swindol, Plaintiff
640 South Division Street
West Point, MS 39773

David O. Butts #7642
Renasant Center, Suite 110
398 East Main Street
Tupelo, MS 38804
Tel: (662) 841-1234
Fax: (662) 841-0357
davidbutts@davidbuttslawfirm.com
Attorney for Plaintiff-Appellant,
Robert Swindol

Aurora Flight Sciences
Corporation, Defendant
A Delaware Corporation

R. Bradley Best, Esq.
Holcomb, Dunbar, Watts, Best
Masters & Golmon, P.A.
400 South Lamar, Suite A
Oxford, MS 38655
Attorney for Appellee

Stephen W. Robinson, Esq.
McGuire Woods, LLP
1750 Tysons Boulevard, Suite 1800
Tysons Corner, VA 22102
Attorney for Appellee

Nicholas D. SanFilippo, Esq.
McGuire Woods, LLP
1750 Tysons Boulevard, Suite 1800
Tysons Corner, VA 22102
Attorney for Appellee

Respectfully submitted,

By: *s/ David O. Butts*
David O. Butts #7642
Renasant Center, Suite 110
398 East Main Street
Tupelo, MS 38804
Tel: (662) 841-1234
Fax: (662) 841-0357
davidbutts@davidbuttslawfirm.com
**Attorney for Plaintiff-Applicant,**
**Robert Swindol**

**STATEMENT REGARDING ORAL ARGUMENT**

Plaintiff Robert Swindol does not request oral argument. The facts of this case are straight forward. The factual allegations of the Complaint, under the standard of review for Fed. R. Civ. P. 12(b)(6) motions, are to be accepted as true as well as any reasonable inferences flowing from them. There are only questions of law for the Court to determine.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS...…………………….…..... i-ii

STATEMENT REGARDING ORAL ARGUMENT...………………..…..... iii

TABLE OF CONTENTS…………………………………………......… iv-v

TABLE OF AUTHORITIES………………………………………….... vi-viii

JURISDICTIONAL STATEMENT……………………………..…... 1

STATEMENT OF ISSUES……………………………………………..… 2

STATEMENT OF THE CASE……………………………………..…... 2-7

SUMMARY OF THE ARGUMENT…………………………………..…... 8

STANDARD OF REVIEW…………………………………………….. 8-9

ARGUMENT………………………………………………………….. 9-28

    I.    THE TRIAL COURT ERRED WHEN IT DISMISSED ROBERT SWINDOL'S WRONGFUL TERMINATION CLAIM…………………..….……… 9-23

        A.    Mississippi Law Favors a Strong Public Policy, Permitting its Citizens the Right to Bear Arms…………………………. 18-19

        B.    Mississippi Does Not have a Remedy to Protect or Vindicate its Citizens' Right to Bear Arms, as the At-Will Doctrine Bars Enforcement of Miss. Code Ann. § 45-9-55……….…. 20-22

        C.    Alternatively, Swindol Requests this Court to Certify this Question of Law to the Mississippi Supreme Court……... 22-23

    II.    THE TRIAL COURT ERRED WHEN IT DISMISSED ROBERT SWINDOL'S DEFAMATION CLAIM……………………..……………..… 23-28

CONCLUSION AND PRAYER FOR RELIEF………………….…… 28-29

CERTIFICATE OF SERVICE…………………………………………...……..… 30

CERTIFICATE OF COMPLIANCE………………………………….....…...… 31

# TABLE OF AUTHORITIES

**Cases:**

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) …………………………………….. 9, 28

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) …………………..27- 28

*Buchanan v. Ameristar Casino Vicksburg, Inc.*, 852 So. 2d 25, 26-27 (Miss. 2003)……………………………………………………………………….. 11-12

*Cleland v. Acad. Sports & Outdoors*, 2013 WL 4519337 (S.D. Miss. Aug. 26, 2013)………………………………………………………………....… 10

*Dancer v. Bryce Corp.*, 2006 WL 897964, at * 3 (N.D. Miss. Apr. 4, 2006)…... 13

*DeCarlo v. Bonus Stores, Inc.*, 989 So. 2d 351 (Miss. 2008)……………………. 10

*Eckman v. Cooper Tire & Rubber Co*., 893 So. 2d 1049, 1052 (Miss. 2009).. 23-25

*Hammons v. Fleetwood Homes of Mississippi, Inc*., 907 So. 2d 357, 360 (Miss. Ct. App. 2004)……………………………………………………………… 10, 16

*Jackson v. Johns-Manville Sales Corp*., 781 F.2d 394, 397 (5th Cir. 1986)……. 20

*JGM Holdings, L.L.C. v. T-Mobile USA, Inc.*, 568 F. App'x 316, 318-19 (5th Cir. 2014)…………………………………………………………………...… 8, 23

*Jones v. Fluor Daniel Servs. Corp*., 959 So. 2d 1044 (Miss. 2007)…………….. 10

*Kelly v. Mississippi Valley Gas Co.*, 397 So. 2d 874 (Miss. 1981) ………….. 11-12

*Laws v. Aetna Finance,* 667 F. Supp. 342, 344 (N.D. Miss. 1987)…………... 14-17

*McArn v. Allied Bruce-Terminix Co., Inc*., So. 2d 603 (Miss. 1993)… 10-12, 15-16

*Medina v. Mims Oil Co.*, 2005 WL 1629800 (N.D. Miss. July 11, 2005)…...... 11-14

*Miranda v. Wesley Health Sys., L.L.C.*, 949 So. 2d 63 (Miss. Ct. App. 2006) …. 10

vi

*Mitchell v. University of Kentucky,* 366 S.W. 3d 895 (Ky. 2012)……………. 20-22

*Parker v. Leaf River Cellulose, LLC.*, No. 2:14cv9-KS-MTP (So. Dist. Miss. 2014)…………………………………………………………………………… 9-10

*Rosamond v. Pennaco Hosiery, Inc.,* 942 F. Supp. 279 (N.D. Miss. 1996)………………………………………………………………… 15-17, 20

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 255-57 (5th Cir. 2009)………… 25

*Shaw v. Burchfield,* 481 So. 2d 247 (Miss. 1985)………………….....…..… 14-15

*Sides v. Duke University*, 74 N.C. App. 331, 328 S.E. 2d 818, 826 (1985)…...… 24

*State v. Smith*, 123 So. 3d 920 (Miss. 2013)……………………………....… 18

*Swengler v. ITT Corp. Electro-Optical Products Div.*, 993 F.2d 1063, 1070-71 (4th Cir. 1993)……………………………………………………………….... 26

*Wheeler v. BL Dev. Corp.*, 415 F.3d 399 (5th Cir. 2005)………………...…… 10

*Willard v. Paracelsus Health Care Corp.,* 681 So. 2d 539 (Miss. 1996)……...… 16

**Statutes:**

Fed. R. Civ. P. 8……………………………………………………………… 4

Fed. R. Civ. P. 12(b)(6) ……………………………………………...……… 9

Miss. Const., art. 3, § 12…………………………………...…....… 18-19, 28

Miss. Code Ann. § 45-9-55…………………………...………………… *passim*

Miss. Code Ann. § 45-9-101……………………………………...…… 20

Miss. Code Ann. § 71-3-7……………………………..………………… 12

Miss. Code Ann. § 71-3-9……………………………………..…… 12

Miss. Code Ann. § 97-37-1…………………………………………………… 6, 18

Miss. R. App. P. 20…………………………………………………...…… 22, 29

Kentucky Revised Statute § 237.115(1)………………………………...… 20-21

Kentucky Revised Statute § 527.020(4)…………………………………… 20-21

# JURISDICTIONAL STATEMENT

## I. District Court's Jurisdiction

The district court had subject-matter jurisdiction over this matter pursuant to

28 U.S.C. § 1332(a)(1), which grants the district courts original jurisdiction over

civil actions "where the matter in controversy exceeds the sum or value of $75,000,

exclusive of interest and costs, and is between citizens of different states."

In the instant matter, Plaintiff Robert Swindol ("Swindol"), is a United

States citizen and resident of Clay County, Mississippi. Defendant Aurora Flight

Sciences Corporation ("Aurora"), is a foreign corporation, organized and existing

under the laws of the State of Delaware. Aurora owns and operates a facility in

Lowndes County, Mississippi, and this is where the matter in controversy arose.

Complete diversity between the parties exists between Swindol and Aurora.

Swindol is entitled to relief sustained as a result of his wrongful discharge in

violation of Miss. Code Ann. § 45-9-55 and for the defamatory remarks made

about him shortly after his discharge, including actual, compensatory,

consequential and punitive damages against Aurora. Swindol's prayer for relief

exceeds the sum of $75,000, exclusive of interest and costs.

## II. Court of Appeal's Jurisdiction

This Court has jurisdiction over this appeal pursuant to 29 U.S.C. § 1291

because the judgment below is a final judgment of the United States District Court.

### III. Timeliness of Appeal

The district court judgment was entered September 30, 2014. Plaintiff Swindol filed a notice of appeal on October 28, 2014. The notice was filed and perfected within the thirty-day period allotted by Fed. R. App. P. 4(a)(1)(A).

### IV. Final Judgment

This appeal is from a final judgment that disposes of all parties' claims.

## STATEMENT OF ISSUES

1. Whether the trial court erred when it dismissed Plaintiff Swindol's claim for wrongful discharge?

2. Whether the trial court erred when it dismissed Plaintiff Swindol's defamation claim?

## STATEMENT OF THE CASE

Swindol filed his Complaint on December 16, 2013. (ROA.1.). In his Complaint, Swindol sought relief on two grounds: (1) wrongful discharge in violation of Mississippi's public policy, and (2) defamation for statements made immediately after his termination. (ROA.4-5.). Defendant Aurora filed a Motion to Dismiss for Failure to State a Claim on January 30, 2014. (ROA.11.).

As to Swindol's claim for wrongful discharge, Aurora argued that it should be dismissed because it failed to state a claim upon which relief may be granted. (*Id.*). Aurora claimed "[t]he termination of Plaintiff's employment with Aurora

was lawful because his employment was at-will and the termination did not violate Mississippi public policy such that it would fall into the very narrow exception to the at-will doctrine." (*Id.*).

As to Swindol's claim for defamation, Aurora advanced two theories supporting its dismissal. (*Id.*). First, Aurora argued that "Plaintiff's conclusory and formulaic allegations of defamation fail to state a plausible claim upon which relief may be granted." (*Id.*). Second, Aurora argued that "every alleged defamatory statement . . . is protected by a qualified privilege and Plaintiff has not pled any facts supporting his allegation that the statements were made with malice, bad faith, or abuse." (*Id.*).

On February 24, 2014, after receiving an extension of time to respond, Swindol filed a Response to Aurora's Motion to Dismiss. (ROA.36.). In support of his wrongful discharge claim, Swindol noted that Aurora's grounds for dismissal rest solely on Mississippi's employment-at-will doctrine, which is not absolute. (*Id.*). His response explained that the at-will doctrine is judicially promulgated, and the Mississippi Supreme Court has already carved exceptions out of this doctrine. (*Id.*). In further support, Swindol's response demonstrated that Aurora's conduct infringed upon a substantial public policy of Mississippi, which is codified in the Mississippi Code. (*Id.*).

In support of his defamation claim, Swindol argued that the pleading

requirements of Rule 8 of the Federal Rules of Civil Procedure were satisfied and cited the general rule that plaintiffs need not anticipate affirmative defenses in their pleadings. (ROA.36-37.). In addition, even if a plaintiff is required to overcome an affirmative defense in his pleadings, Swindol argued that his pleadings destroyed the qualified privilege defense because the facts show that Aurora acted with at least reckless disregard as to the truth or falsity of its statement that Swindol was a security threat. (*Id*.).

After reviewing each party's motion and accompanying brief, the district court entered its order granting Aurora's Motion to Dismiss for Failure to State a Claim on September 30, 2014. (ROA.96.). The district court dismissed Swindol's wrongful discharge claim because it could not "say that the Mississippi Supreme Court would recognize a third exception to the doctrine of at-will employment" as proposed in Swindol's pleadings. (ROA.103.). The district court also dismissed Swindol's defamation claim without prejudice because "Swindol ha[d] alleged no facts showing that Aurora or its human resource manager acted in bad faith or with malice when warning its employees about the perceived safety risk posed by the recently terminated and indisputably armed Swindol." (ROA.106-07.).

Swindol filed a Notice of Appeal on October 28, 2014. (ROA.108.). For the Court to understand the nature of the claims advanced against Aurora, the facts are delineated in significant though not exhaustive detail below.

In 2010, Aurora hired Swindol as a mechanical assembler and painter. (ROA.2.).[1] Swindol had significant previous experience in this area as he had been trained extensively in the U.S. Marine Corps in maintaining heavy equipment and diesel engines, as well as small aircraft repair with a primary focus on fiberglass repair and paint operations. (*Id.*). After his honorable discharge from the Marine Corps, Swindol pursued a career as a technician in aeronautics, first being hired by Integrated Dynamics as an electro-mechanical technician, receiving training in that company's robotic and vibration dampening systems. (*Id.*). Thereafter, Swindol was hired by American Eurocopter, where his duties ranged from writing procedures and delivering training in chemical conversions of sheet metals, to priming and painting, riveting, heat treatment, and bonding of composites and dissimilar materials. (*Id.*). From Eurocopter Swindol was hired by Aurora. (*Id.*).

On May 31, 2013, Aurora fired Swindol. (*Id.*). The ostensible reason for his firing was a violation of Aurora company policy for bringing a firearm on the Aurora premises. (*Id.*). In fact, Swindol had a firearm in his locked vehicle parked in the Aurora parking lot, which was an open area without any restrictions to access by the public. (*Id.* at 2-3.). Under Miss. Code Ann. § 97-37-1, Swindol was entitled to possess and transport a firearm in his vehicle. And under Miss. Code

---

[1] Aurora owns and operates a facility in Columbus, Mississippi that fabricates and performs final assembly of composite aerostructures for defense and commercial aerospace customers. (ROA.1).

Ann. § 45-9-55 it is illegal for Swindol's employer, Aurora, to "establish, maintain, or enforce any policy or rule . . . prohibiting a person from transporting or storing a firearm in a locked vehicle in any parking lot, parking garage, or other designated parking area," unless, in the case of a private employer, such as Aurora, access to such parking area is "restricted or limited through the use of a gate, security station or other means of restricting or limiting general public access onto the property"— Aurora's parking area was not restricted. (*Id.* at 3). Aurora, by maintaining and enforcing its policy prohibiting firearms in locked vehicles in its unrestricted parking area, violated Mississippi law. (*Id.*).

The circumstances surrounding Swindol's firing were that a co-worker informed Swindol that the human resources manager and another employee were taking photographs of the interior of Swindol's truck. (*Id.*). At least three Lowndes County deputy sheriffs were present. (*Id.*) Thereafter, Swindol's supervisor directed Swindol to a conference room. (*Id.*). Present in the conference room were Swindol's supervisor, the human resources manager, and the acting general manager. (*Id.*). The Lowndes County sheriff's deputies remained outside the room, as though guarding Swindol, and could hear the proceedings in the conference room. (*Id.*). Only the human resources manager spoke at this meeting. (*Id.*). She informed Swindol it was apparent he no longer was interested in working at Aurora and he was being terminated. (*Id.*). The human resources manager informed

Swindol he would not be allowed to retrieve his personal belongings and he would be arrested if ever came on Aurora's property again. (*Id.*). At the conclusion of the meeting, the sheriff's deputies escorted Swindol to his car and insured that he left the Aurora premises. (*Id.* at 4.).

Thereafter, the Aurora human resources manager arranged a plant-wide meeting and informed all other Aurora employees that Swindol was a "security risk" and instructed them to call 911 if Swindol were seen anywhere near Aurora's premises. (*Id.*). The human resources manager also advised the employees present that if they failed to notify law enforcement of Swindol's presence near the plant their jobs would be at risk also. (*Id.*).

Rumors of Swindol's termination at Aurora spread and were distorted. (*Id.*). Employees at American Eurocopter, Swindol's former employer, were lead to believe that Swindol was fired for carrying a weapon inside Aurora's office complex. (*Id.*). Such rumors even spread to Eurocopter's Texas facility. (*Id.*).

Swindol has diligently sought to find gainful employment in his field, without success. (*Id.*). On information and belief, Aurora's incendiary allegations have tainted his professional reputation and done permanent damage to his employability in his chosen field. (*Id.*).

## SUMMARY OF THE ARGUMENT

Defendant Aurora terminated Plaintiff Swindol for having a firearm in his locked vehicle parked in an unsecure Aurora parking lot. (ROA.2-3.). Mississippi Code Annotated § 45-9-55, however, prohibits employers from "establish[ing], maintain[ing], or enforc[ing] any policy or rule that has the effect of prohibiting a person from transporting or storing a firearm in a locked vehicle in any parking lot, parking garage, or other designated parking area," unless, in the case of a private employer, such as Aurora, access to such parking area "is restricted or limited through the use of a gate, security station or other means restricting or limiting general public access onto the property." (*See id.*).

Aurora violated clear statutory commands by maintaining an unlawful policy and then used that same unlawful policy as grounds for terminating an employee who was merely exercising the rights conferred thereunder. (*Id.*). Thereafter, Aurora, through their human resources manager, defamed Swindol by labeling him a "security risk." (*Id.* at 3-4.). If affirmed, the district court's dismissal of Swindol's claims will fortify Aurora's brazen disregard for the rule of law and create an anomaly in the law—a legal right without a remedy.

## STANDARD OF REVIEW

This Court reviews dismissals pursuant to Rule 12 (b)(6) de novo. *JGM Holdings, L.L.C. v. T-Mobile USA, Inc.*, 568 F. App'x 316, 318-19 (5th Cir. 2014).

This court may "affirm a district court's Rule 12(b)(6) dismissal on any grounds supported by the record." *Id.* (citation omitted). "When reviewing a dismissal for failure to state a claim, all well pleaded facts are accepted as true and are viewed in the light most favorable to the plaintiff." (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

## ARGUMENT

## I. THE TRIAL COURT ERRED WHEN IT DISMISSED ROBERT SWINDOL'S CLAIM FOR WRONGFUL DISCHARGE

The district court dismissed Swindol's wrongful discharge claim with prejudice for failing to state a claim upon which relief may be given. (ROA.96.). The district court, in recognizing that its role in making an *Erie* guess is to predict state law—not create or codify it—concluded that considering "Mississippi's longstanding reluctance to expand its existing public policy exceptions, the Court cannot say that the Mississippi Supreme Court would recognize a third exception to the doctrine of at-will employment as proposed here." (ROA.96.) (internal citations omitted).

It's important to note, a district court has only addressed Miss. Code Ann. § 45-9-55 on one other occasion. *See Parker v. Leaf River Cellulose, LLC.*, No. 2:14cv9-KS-MTP (So. Dist. Miss. 2014). While Parker attempted to argue the

"occurrence" giving rise to his damages was his wrongful termination in violation of Miss. Code. Ann. § 45-9-55—not anything arising out of carrying a firearm in his vehicle—the court found Parker's textual argument unconvincing. *Id.* at 5-6. (noting "there could be no violation of section 45-9-55(1) in the absence of Leaf River 'prohibiting a person from transporting or storing a firearm in a locked vehicle in any parking lot.'"). The district court therefore dismissed Parker's complaint, and refused to recognize a new exception to Mississippi's employment at-will doctrine. *Id.* at 10-11. *Parker*, however, was decided on different grounds than the case at issue. *Id.* (holding the plaintiff's lawsuit was "barred by section 45-9-55(5) of the Mississippi Code.").

In the case at hand, although the district court cited several cases supporting its *Erie* guess, all but two of those cases concern the expansion of the existing *McArn* exceptions.[2] *See McArn v. Allied Bruce-Terminix Co., Inc.*, 626 So. 2d 603,

---

[2] *DeCarlo v. Bonus Stores, Inc.*, 989 So. 2d 351 (Miss. 2008) (refusing to extend the *McArn* exceptions to create individual liability where the individual defendant was acting in the course and scope of his employment); *Jones v. Fluor Daniel Servs. Corp.*, 959 So. 2d 1044 (Miss. 2007) (refusing to extend *McArn* exceptions for the reporting of illegal acts that were not related to defendant's business); *Miranda v. Wesley Health Sys., L.L.C.*, 949 So. 2d 63 (Miss. Ct. App. 2006) (doctor failed to show *McArn* exception applied because he could not show his termination was due to his refusal to overprescribe medication); *Hammons v. Fleetwood Homes of Mississippi, Inc.*, 907 So. 2d 357, 360 (Miss. Ct. App. 2004) (limiting *McArn* exceptions to "acts complained of [that] warrant the imposition of criminal penalties, as opposed to mere civil penalties"); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399 (5th Cir. 2005) (requiring the employer to be engaged in criminal activity for the *McArn* exception to apply); *Cleland v. Acad. Sports & Outdoors*, 2013 WL 4519337 (S.D. Miss. Aug. 26, 2013) (finding *McArn* exceptions did not apply because plaintiff failed to plead enough facts to show employer was engaged in criminal forgery).

607 (Miss. 1993). Swindol, however, is not requesting this Court to extend the

*McArn* exceptions to the at-will doctrine, i.e., allowing an employee to pursue a

tort claim when discharged for reporting or refusing to engage in criminal behavior

on the part of the employer. *See id.* Rather, Swindol seeks to have this Court

enforce Miss. Code Ann. § 45-9-55 by recognizing a separate and additional public

policy exception to the at-will doctrine because, like the situation in *McArn*, it

would fortify public policies strongly held by the state of Mississippi.

Therefore, of the cases cited by the district court, only those two asking for

wholly separate exceptions to the at-will doctrine bear squarely on the instant

matter: *Buchanan v. Ameristar Casino Vicksburg, Inc.*, 852 So. 2d 25, 26-27 (Miss.

2003) and *Medina v. Mims Oil Co.*, 2005 WL 1629800 (N.D. Miss. July 11, 2005).

In *Buchanan*, the plaintiff sought an exception to the at-will doctrine after she was

allegedly fired for filing a workers' compensation claim. *Buchanan*, 852 So. 2d at

26-27. The court relied on *Kelly v. Mississippi Valley Gas Co*. in finding that the

at-will doctrine barred the plaintiff's claim, which refused to recognize a common

law tort action against an employer by an employee who may have been

discharged for filing a workers' compensation claim. 397 So. 2d 874, 877 (Miss.

1981). In support of this finding, the *Kelly* court cited principles of separation of

power as the foundation for its refusal.[3] *See id*. at 876. The *Buchanan* Court then quickly dispensed with the plaintiff's action after discussing the inapplicability of the *McArn* exception to the facts before it. *Buchanan*, 852 So. 2d at 26-27.

The facts before this Court, however, are distinguishable from those in *Buchanan* and *Kelly*. Section 45-9-55 of the Mississippi Code Annotated expressly prohibits Aurora's conduct that gave rise to this controversy. The Legislature explicitly made maintaining and enforcing a policy prohibiting employees from keeping a firearm within a locked vehicle in an unsecured parking lot unlawful. *See* Miss. Code Ann. § 45-9-55. Therefore, this Court would not be engrafting provisions different from that expressed by the Legislature. Rather, it is the other way around: a judicially promulgated doctrine, the at-will doctrine, is frustrating the Legislature's intent by refusing an aggrieved plaintiff any remedy at law, even though Aurora has tread heavily upon this statutorily conferred right.

Moreover, the Workers' Compensation Act involved in *Buchanan* and *Kelly* serves different aims than the statute at the core of the matter in controversy. The Workers' Compensation Act embodies a historic bargain between employee and

---

[3] *See Kelly*, 397 So. 2d at 876 (stating "[o]ur Workmen's Compensation Law does not contain a provision for retaliatory discharges, nor does it contain a provision making it a crime for an employer to discharge an employee for filing a claim. If we create the remedy sought by plaintiff in this case, we would thereby engraft on the law an exception different from that expressed by the Legislature.").

employer. *See* Miss. Code Ann. § 71-3-9. In return for no-fault benefits, the employee gives up his right to bring a tort action against his employer for injuries sustained within the course of his employment. *See id*. Even if the injured worker were terminated for filing a workers' compensation claim, the purpose of the Act is not thwarted. *See id.* Despite no longer being among the ranks of the employed, the injured worker's injuries and disabilities would still be covered as workers' compensation law requires. *See* Miss. Code Ann. § 71-3-7.

The opposite is true in this case. Section 45-9-55 of the Mississippi Code Annotated prohibits an *employer* from maintaining a policy prohibiting its *employees* from keeping a firearm in their locked vehicle under the conditions noted above. Thus, in order for this right to be exercised, an employment relationship must exist. Unlike the right to workers' compensation payments, the right to keep a firearm in an employer's unsecure parking lot is contingent on being employed, and the purpose of Miss. Code Ann. § 45-9-55 is thwarted when an employee is terminated for exercising his rights thereunder.

In *Medina v. Mims Oil Co.*, the plaintiff brought a wrongful discharge suit after her employer allegedly fired her while she was sick so as to make her ineligible for health benefits. 2005 WL 1629800, at * 3. In finding that the at-will doctrine barred her claim, the court held that it "[did] not have the authority to make new law in Mississippi and will not do so." *Id*. However, this is an

overstatement of the law.

A more succinct articulation of the law can be found in *Dancer v. Bryce Corp.*, which stated that "[w]hen a Court must make an *Erie* guess, it is not the Court's role to create or modify state law, but rather only to predict it." 2006 WL 897964, at * 3 (N.D. Miss. Apr. 4, 2006). Although articulating the standard for *Erie* guesses correctly, the district court in the present case, like the *Medina* Court above, too narrowly interpreted its role in deciding this controversy.

Amply cited in Swindol's pleadings yet conspicuously missing in the district court's memorandum opinion is the case *Laws v. Aetna Finance*. 667 F. Supp. 342 (N.D. Miss. 1987). Not only is this case factually and procedurally similar to the instant matter, *Laws* is the genesis of Mississippi's public policy exceptions to the terminable at-will doctrine. *See id.* Moreover, it was decided by a United States District Court for the Northern District of Mississippi making an *Erie* guess. *Id.*

In *Laws*, the plaintiff was allegedly fired for refusing to engage in activities that violated the Truth in Lending Act, and he brought a wrongful discharge suit against his employer. *Laws*, 667 F. Supp. At 342-44. On summary judgment, the court found that there was no Mississippi precedent for the action before him and commented that it was unfortunate that the case did not remain before a Mississippi court for resolution. *Id.* The court then struck to the heart of the matter of the plaintiff's case: "Laws seeks here the recognition of a public policy

exception to the terminable at-will doctrine where an employee is asked to perform illegal acts on behalf of his employer." *Id*. at 344.

The *Laws* Court observed that the Mississippi Supreme Court would not be reluctant, in the proper case, to reconsider the at-will employment rule. *Id*. at 346 (citing *Shaw v. Burchfield*, 481 So. 2d 247, 253-54 (Miss. 1985), wherein the Court observed that it was not insensitive to "the fact that the impact of termination upon the employee is in general more adverse in a way that is qualitatively different than what the employer experiences when it is the employee who walks off the job . . . .").

The *Laws* court's *Erie* guess was that the Mississippi Supreme Court would append an exception to the at-will employment doctrine and hold than an employee did have a cause of action for wrongful discharge when that discharge was motivated by a refusal to engage in illegal acts for his employer. *Id*. at 348-49. Of course, the *Laws* court was correct in its *Erie* guess, and six years later the Mississippi Supreme Court not only adopted the exception determined by the *Laws* court, but expanded on it in *McArn v. Allied Bruce Terminix Co., Inc.* when the court held, "[w]e are of the opinion that there should be in at least two circumstances a narrow public policy exception to the at will doctrine . . . ." 626 So. 2d 603 (Miss. 1993) (creating an exception to the at-will doctrine when termination arises from an employee reporting or refusing to engage in illegal

activities).

Only three years after *McArn* was decided, the *Laws* court was again confronted by an analogous situation in *Rosamond v. Pennaco Hosiery, Inc*. 942 F. Supp. 279 (N.D. Miss. 1996). In *Rosamond*, the plaintiff brought a wrongful discharge action after she had been fired for reporting an ADA violation to the Equal Employment Opportunity Commission. *Id*. at 282. The defendant responded by arguing that the public policy exceptions to the at-will doctrine extended only to reports of "criminal illegality." *Id*. at 286. The court noted that in both *McArn* and *Willard v. Paracelsus Health Care Corp.*, 681 So. 2d 539 (Miss. 1996), the Mississippi Supreme Court had chosen the word "illegal" rather than "criminal" when delineating the exceptions to the at-will employment rule, and "[f]urther . . . the court in *McArn* indicated that *there were indeed additional, but as yet undetermined*, exceptions to the at-will employment doctrine under Mississippi law." *Rosamond*, 942 F. Supp. At 286 (emphasis added).[4]

The court determined, however, in another *Erie* guess, that the Mississippi Supreme Court would not expand the exceptions "so that the plaintiff in this case would be allowed to maintain an action for wrongful discharge." *Id*. In explaining its refusal to expand the exceptions to permit the plaintiff's wrongful discharge

---

[4] Mississippi has since limited *McArn* exceptions to "acts complained of [that] warrant the imposition of criminal penalties, as opposed to mere civil penalties. *Hammons v. Fleetwood Homes of Mississippi, Inc*., 907 So. 2d 357, 360 (Miss. Ct. App. 2004).

claim, the court explained that the purpose of creating "public policy exceptions is to further public policy of the state of Mississippi [by] . . . *promoting compliance with the law*. *Id.* (citations omitted) (emphasis added). The state's purpose of promoting compliance with the law, however, "is frustrated when employees are subjected to the threat of losing their employment *without legal remedy*" when asked by their employer to either break the law, or to not report their employer's illegal conduct. *Id.* (internal citations omitted) (emphasis added).

The *Laws* court reasoned that there would be no need to extend the public policy exceptions to encompass *Rosamond's* facts because existing law already protects the public policy at issue with an adequate remedy in law. *Id*. at 287. The plaintiff in *Rosamond* had an adequate remedy under the Americans with Disabilities Act, and this remedy would ensure compliance with the Act. *Id*. In stressing the importance of the availability of an adequate, existing remedy, the court reasoned that, as protecting and vindicating certain public policies is the goal of public policy exceptions, where the policies are "preserved by other remedies, then the public policy is sufficiently served." *Id.* at 287. Thus, applying the public policy exception requires "(1) that the discharge violates some well-established public policy, and (2) that there be no remedy to protect the interest of the aggrieved employee." *Id.*

In the case at issue, after applying the criteria espoused by the *Rosamond*

Court, clearly (1) there does indeed exist a well-established public policy

protecting the conduct for which Swindol was terminated, and (2) there is presently

no remedy to protect the aggrieved employee or society because the judicially

promulgated at-will doctrine bars enforcement of Miss. Code Ann. § 45-9-55.

### A. Mississippi Favors a Strong Public Policy, Permitting its Citizens the Right to Bear Arms

A well-established public policy of advancing the rights and interest of its

citizens to bear arms does exist in Mississippi, which is clearly manifested by

Mississippi's State Constitution[5] and its statutory offspring, Miss. Code Ann. § 45-

9-55.[6] Mississippi also allows its citizen to carry partially concealed weapons. *See*

Miss. Code Ann. § 97-37-1(4). Strong community interests, as evidenced by the

legislative amendment, have effectively made Mississippi an "open carry" state,

greatly expanding Mississippi's citizens' right to bear arms.[7] Further, Mississippi

has long permitted the carrying of weapons by its citizens in their vehicles as an

exception to the concealed weapons statute.  Miss. Code. Ann. § 97-38-1(2).

---

[5] The Mississippi Constitution, article 3, section 12 provides the following: "The right of every citizen to keep and bear arms in defense of his home, person, or property, or in aid of the civil power when thereto legally summoned, shall not be called in question, but the legislature may regulate or forbid carrying concealed weapons."

[6] In relevant part, Miss. Code Ann. § 45-9-55 provides "a public or private employer may not establish, maintain, or enforce any policy or rule that has the effect of prohibiting a person from transporting or storing a firearm in a locked vehicle in any parking lot, parking garage, or other designated parking area," unless the employer provided area is "restricted or limited through the use of a gate, security station or other means of restricting or limiting general public access onto the property."

[7] This statute withstood constitutional challenge in *State v. Smith*, 123 So. 3d 920 (Miss. 2013).

Swindol's Complaint unequivocally states that on May 31, 2013, Aurora terminated Swindol for bringing a firearm onto Aurora's property. (ROA.1.). Swindol did so by having his firearm in his locked vehicle in Aurora's parking lot, "which was in an open area without any restrictions to the public." (*Id.*). The Complaint further alleges that Aurora promulgated, established, maintained and enforced a policy disallowing firearms in locked vehicles in its parking area. (*Id.* at 2-3.). Aurora has come forth with no proof it did otherwise. It is therefore undeniable that Aurora violated the provisions of Miss. Code Ann. § 45-9-55(2), and Swindol suffered the consequences of that violation by having his employment terminated. (*See id.* at 2-3.).

Article 3, section 12 of Mississippi's Constitution, Mississippi's statute permitting "open carry" of firearms, Mississippi's statute permitting weapons to be carried in vehicles, Mississippi's statutes allowing the carry of concealed weapons pursuant to permit,[8] and Mississippi's statute, implicated here, permitting employees to keep weapons in their locked vehicles in parking areas from which the public is not excluded, conclusively demonstrate a strong public policy of the State of Mississippi for its citizens to "bear arms" under most circumstances.

---

[8] Miss. Code Ann. §§ 45-9-101, *et seq.*

**B.** **Mississippi Does Not have a Remedy to Protect or Vindicate its Citizens' Right to Bear Arms, as the At-Will Doctrine Bars Enforcement of Miss. Code Ann. § 45-9-55**

After finding that a strong community interest would be offended by not permitting wrongful discharge actions to lie, the *Rosamond* court's analysis asks whether there are any existing, adequate remedies available. *Rosamond*, 942 F. Supp. at 286. Under the at-will doctrine as it now stands, Swindol is entirely without a legal remedy, unless he is granted the right to proceed to trial with a claim for wrongful discharge. In addition to ignoring substantial precedent and too narrowly interpreting its role in making and *Erie* guess, the district court failed to consider the Fifth Circuit's guidance in making an *Erie* guess.

When making an *Erie* guess in the absence of specific guidance from the Mississippi Supreme Court, courts within the Fifth Circuit should look to, among other sources, the rule in other states looked to by Mississippi courts when they formulate the substantive law of Mississippi. *See Jackson v. Johns-Manville Sales Corp.*, 781 F.2d 394, 397 (5th Cir. 1986). Swindol directed the district court to *Mitchell v. Univ. of Kentucky*, 366 S.W.3d 895, 898 (Ky. 2012). (ROA.53-54; Pl.'s Mem. Br. in Supp. of Pl.'s Resp.: 14-15.). In *Mitchell*, the plaintiff filed a wrongful discharge action against his employer after he was terminated for storing a firearm in his vehicle, which was parked on his employer's property. *Mitchel*, 366 S.W.3d at 898. As in Swindol's case, the plaintiff was exercising his rights under a state

statute, which states "[n]o person or organization, public or private, shall prohibit a person licensed to carry a concealed deadly weapon from possessing a firearm, ammunition, or both, or other deadly weapon in his or her vehicle." KRS § 527.020(4).

At tension with this statute was another permitting the plaintiff's employer, a university, to maintain a policy restricting the possession of deadly weapons on property under its control, and the employer did maintain a strict, no-firearms policy. *See* KRS § 237.115(1). To effectuate the legislature's intent in passing KRS § 527.020(4), the court held that "conflict must be resolved in favor of KRS § 527.020(4)." *Mitchell*, 366 S.W.3d at 901. After citing several statutes establishing a strong public policy in favor of exempting a person's vehicle from restrictions on the possession of deadly weapons, the court found that the plaintiff's case fit within Kentucky's public policy exception to its at-will employment doctrine. *Id.* at 901, 903. Kentucky's public policy exception to its terminable at-will doctrine applies when the following is met:

> (1) The discharge must be contrary to fundamental and well-defined public policy as evidence by existing law. (2) That policy must be evidenced by a constitutional or statutory provision. (3) The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact.

*Id.* at 898.

The district court was correct in its assertion that Kentucky has a broader

framework for public policy exceptions. (*See* ROA.103.) However, the district court erred in finding that *Mitchell v. Univ. of Kentucky*, in light of this broader framework, was of no assistance in determining how the Mississippi Supreme Court would rule in this matter. (*See id*.). The *Mitchell* Court used Kentucky's public policy exception to give effect to the words of its General Assembly's enactments. *See Mitchell*, 366 S.W.3d at 901.

Although not asking this Court to categorically replace Mississippi's existing public policy exceptions with *Mitchell's* broader framework, Swindol respectfully asks for a third exception to Mississippi's at-will doctrine when it would effectuate the Legislature's intent in duly enacted legislation. As it stands now, Mississippi's judicial at-will doctrine is stifling a fundamental and well-defined public policy of Mississippi by protecting those employers who violate Miss. Code Ann. § 45-9-55.

## C.    Alternatively, Swindol Requests this Court to Certify this Question of Law to the Mississippi Supreme Court

In the alternative, Swindol requests this Court, pursuant to Miss. R. App. P. 20, to certify the following question to the Mississippi Supreme Court:

> Whether Mississippi's at-will employment doctrine bars former employees from bringing wrongful discharge actions against their former employers when their discharge is based on their exercise of the rights conferred under Mississippi Code Annotated § 45-9-55.

Certification is proper because this controversy involves questions of state law that

are determinative, and there are no controlling precedents in the decisions of the Supreme Court of Mississippi to guide this Court.[9]

## II. THE TRIAL COURT ERRED WHEN IT DISMISSED ROBERT SWINDOL'S CLAIM FOR DEFAMATION

In dismissing Swindol's defamation claim without prejudice for failing to state a claim upon which relief may be given, the district court reasoned "Swindol . . . alleged no facts showing that Aurora or its human resources manager acted in bad faith or with malice when warning its employees about the perceived safety risk posed by the recently terminated and indisputably armed Swindol. (ROA.106-07.). Therefore, Swindol's defamation claim was dismissed because the district court determined that his pleadings failed to overcome Aurora's qualified privilege defense. (*See id.*).

Mississippi courts employ a bifurcated process when analyzing defamation claims. *Eckman v. Cooper Tire & Rubber Co.*, 893 So. 2d 1049, 1052 (Miss. 2005). First, the court must determine whether the occasion calls for a qualified privilege. *Id*. Under Mississippi law, "[a] communication made in good faith and on a subject matter in which the person making it has an interest or . . . duty, is privileged if made to . . . persons having a corresponding interest or duty, even

---

[9] For clarification, this sentence is not meant to be construed as stating that no Mississippi Supreme Court precedent exists concerning the public policy exceptions to Mississippi's at-will doctrine. Rather, the Mississippi Supreme Court has not yet had an opportunity to reconcile § 45-9-55 with its employment at-will doctrine.

though it contains matter which without this privilege would be slanderous." *Id.*

The district court erred in finding that the human resources manager's plant-wide publication is an occasion triggering the qualified privilege. (*See* ROA.106.). For a communication to be privileged, it must first be "made in good faith and on a subject matter in which the person making it has an interest . . . ." *Eckman*, 893 So. 2d at 1052. Besides lawfully having a firearm in his vehicle, as is his right per Miss. Code Ann. § 45-9-55, the pleadings offer no other justification for Aurora's human resources manager, in good faith, to conclude and broadcast that Swindol was a security risk. The pleadings do not indicate that Swindol had become hostile or enraged after he was terminated, nor do the pleadings indicate that Swindol had any history of workplace violence. Furthermore, the pleadings are silent as to whether there was any form of investigation into why Swindol had a weapon in his vehicle to justify him being painted as a security risk to the entire workforce. Based on the pleadings, the district court simply did not have any facts tending to show that the qualified privilege applied to the human resources manager's publication or that it was made in good faith.

Even if a qualified privilege did exist under the facts contained in the pleadings, the district court was then directed to determine whether the privilege was overcome by malice, bad faith, or abuse. *Eckman*, 893 So. 2d at 1052. A publication is made with "malice" if, at the time it was published, the speaker had

knowledge of its falsity or acted in reckless disregard as to its truth or falsity. *Id*. at 1053. Although the plaintiff in a defamation action bears the burden of proving falsity, as well as fault, before recovering damages, on a Rule 12 (b)(6) motion, a defamation plaintiff need only plead "enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim." *See id*.; *see also Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 255-57 (5th Cir. 2009).

The district court based its finding that Swindol failed to allege any facts showing Aurora or its human resources manager acted with malice on the following excerpts taken from Swindol's Complaint:

> [T]he Aurora human resource manager arranged a plant-wide meeting and informed all other Aurora employees that Swindol was a security risk and instructed them to call 911 if Swindol were seen anywhere near Aurora's premises . . . .

> Aurora acted willfully and maliciously, or with gross disregard of Swindol's rights, evidenced by its treatment of him at the time of his termination, and, specifically, Aurora's highly defamatory remarks concerning him being a "security risk" or words to that effect, implying or accusing Swindol of having committed a crime, or other words claiming or implying that Swindol was a "dangerous" person not to be permitted on Aurora's premises, and, in fact, if so seen that law enforcement was to be informed, and Aurora, through its agents and employees, in the course and scope of their employment, slandered and defamed Swindol and such acts constitute slander *per se*.

(ROA.103.). The district court erred by failing to consider other allegations contained in Swindol's Complaint that would have allowed it to draw the

reasonable inference that Aurora made a publication in reckless disregard as to its truth or falsity. (*See* ROA.2-4.).

In addition to those passages cited by the district court, Swindol's Complaint alleged these facts. Aurora maintained a policy prohibiting employees from keeping firearms in their vehicles. (ROA.2-3.). This policy violated Miss. Code Ann. § 45-9-55 because Aurora had no implementations restricting access to the parking lot. (*Id.*). On May 31, 2013, Aurora fired Swindol for having a firearm in his locked vehicle. (*Id.*). Sheriff's deputies escorted Swindol off Aurora's premises. (*Id.* at 4.). Once Swindol was gone, Aurora's human resources manager held a plant-wide meeting informing all other Aurora employees that Swindol was a security risk and instructed them to call 911 if they saw Swindol anywhere near Aurora's premises. (*Id.*). Subsequently, Swindol discovered that employees of his former employer, Eurocopter, were lead to believe that he was fired for carrying a weapon inside Aurora's office complex. (*Id.*).

Clearly labeling a person a "security risk" is defamatory. *See Swengler v. ITT Corp. Electro-Optical Products Div.*, 993 F.2d 1063, 1070-71 (4th Cir. 1993) (applying Virginia state law). In *Swengler*, the plaintiff accused his employer of being a "security risk." *Id.* at 1071. On appeal, the Fourth Circuit held "it is defamation per se to make false statements which prejudice [a] person in his or her profession or trade" where the statements relate "to the skills or character required

to carry out the particular occupation of the plaintiff." *Id.* (internal quotation marks omitted).

Aurora has offered no other grounds supporting its human resources manager's mass publication that Swindol was a "security risk." The sole factual basis available to the district court for Aurora's claim that Swindol was a "security risk" is the fact that he had a weapon in his locked vehicle, in Aurora's publicly accessible parking lot, which he was legally entitled to do. *See* Miss. Code Ann. § 45-9-55. All of the allegations in Swindol's Complaint preceding the recitation of facts leading to Swindol's termination give no other reason for the human resources manager, or anyone else, to believe, as a fact, that Swindol was a "security risk." Moreover, as mentioned above, the pleadings contain no allegations of any form of investigation into the circumstances underlying Swindol's possession of a firearm or his intentions therewith.

In sum, Swindol's Complaint has gone "beyond mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action," and has established facts showing that Aurora's human resources manager made a plant-wide publication that Swindol was a "security risk" in reckless disregard as to its truth or falsity. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The undisputed facts contained in the pleadings provide no basis for Swindol being labeled a "security risk," and the district court could have, and doubtless should

have, from the facts alleged in the Complaint—and their "reasonable inferences"—concluded that Aurora acted with malice, bad faith, or abuse in publication of this slanderous remark impugning Swindol's reputation.

## CONCLUSION

In light of Mississippi's strong public policy of the right of its citizens to bear arms—as evidenced by the Mississippi Constitution, Mississippi's amended concealed weapons statute, Mississippi's statute permitting the storage of a weapon in a locked vehicle in an employer's parking lot to which the public has access—the district court erred in holding that the Mississippi Supreme Court would not recognize a third exception to the doctrine of at-will employment as proposed here.

In this case, Aurora offended the public policy of Mississippi, as evidenced by a duly enacted statute, by using an unlawful company policy to discharge a Mississippi citizen, and it now seeks to use a judicially promulgated doctrine, Mississippi's at-will employment doctrine, to shield it from the consequences of its lawlessness. Not only will this result in inequities, it offends the traditional notions of the separation of powers by allowing the judiciary to usurp a constitutional legislative enactment.

Alternatively, as to Plaintiff Swindol's claim for wrongful discharge, Plaintiff Swindol prays that this Court certify this determinative question of law, for which there is no controlling precedent, to the Mississippi Supreme Court

pursuant to Miss. R. App. P.20.

Plaintiff Swindol further submits to the Court that his Complaint, as to its allegations of defamation, meets the requirements of *Iqbal* and *Twombly* and has alleged sufficient factual basis for the Court to draw the reasonable inference that Aurora's publication was made with reckless disregard as to its truth or falsity.

Therefore, Plaintiff Robert Swindol, prays this Court reverse the district court's granting of Defendant Aurora Flight Sciences Corporation's Motion to Dismiss for Failure to State a Claim as to both Plaintiff Swindol's wrongful discharge and defamation claims.

Respectfully submitted,

By: *s/ David O. Butts*
David O. Butts #7642
Renasant Center, Suite 110
398 East Main Street
Tupelo, MS 38804
Tel: (662) 841-1234
Fax: (662) 841-0357
davidbutts@davidbuttslawfirm.com
Attorney for Plaintiff-Appellant,
Robert Swindol

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been served upon counsel for all parties to this proceeding as identified below through the Court's electronic filing system as follows:

Holcomb, Dunbar, Watts, Best
Masters & Golmon, P.A.
R. Bradley Best, Esq.
Attorney for Defendant
400 South Lamar, Suite A
Oxford, MS 38655

McGuire Woods, LLP
Stephen W. Robinson, Esq.
1750 Tysons Boulevard, Suite 1800
Tysons Corner, VA 22102

McGuire Woods, LLP
Nicholas D. SanFilippo, Esq.
1750 Tysons Boulevard, Suite 1800
Tysons Corner, VA 22102

Tupelo, Mississippi, this 14th day of January, 2015.

*s/ David O. Butts*
**DAVID O. BUTTS**

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation, Typeface
Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B) because:

    [X] this brief contains 7,539 words, excluding the parts of the brief
exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [ ] this brief uses a monospaced typeface and contains _____ lines of
text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5), and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [X] This brief has been prepared in a proportionally spaced typeface using
Microsoft Office Word 2013 in Times New Roman font, *or*

    [ ] this brief has been prepared in a monospaced typeface using
_____ with _____.


*s/ David O. Butts*
DAVID O. BUTTS #7642
Attorney for Plaintiff/Appellant
Robert Swindol
Dated: 01/14/2015