IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 14-60779

ROBERT SWINDOL,

    Plaintiff - Appellant

v.

AURORA FLIGHT SCIENCES CORPORATION,

    Defendant - Appellee

United States Court of Appeals
Fifth Circuit
**FILED**
August 28, 2015
Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Mississippi

Before WIENER, CLEMENT, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

    The district court dismissed Robert Swindol's wrongful discharge and defamation claims under Federal Rule of Civil Procedure 12(b)(6). It held that Mississippi's employment-at-will doctrine barred the wrongful discharge claim and that falsity had not been adequately alleged for the defamation claim. The wrongful discharge claim presents an important and determinative question of state law that has not been addressed by Mississippi courts. We conclude we should certify the question to the Mississippi Supreme Court.

    Before explaining the reasons for the certification, we address an issue of jurisdiction. If we lack jurisdiction, we can neither certify a controlling legal question to a state court nor resolve the merits ourselves. After briefing was

completed, this court noticed that Swindol, a Mississippi citizen, had not alleged Aurora's principal place of business in his complaint. A party claiming diversity of citizenship, as does Swindol, must allege the state of incorporation and the principal place of business of corporate parties. *Nadler v. Am. Motors Sales Corp.*, 764 F.2d 409, 413 (5th Cir. 1985). In his complaint, Swindol alleged only that Aurora "is a foreign corporation, organized and existing under the laws of the State of Delaware, qualified to do and doing business in the State of Mississippi," with an agent there for service of process.

Though the complaint was deficient, "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. Motions to amend under Section 1653 may be considered when "our discretionary examination of the record as a whole establishes at least a substantial likelihood that jurisdiction exists." *Nadler*, 764 F.2d at 413.

Because the appellate record was deficient, we ordered the parties to file a joint letter brief regarding jurisdiction. The parties responded by stipulating that Aurora's principal place of business is in Virginia. Further, the parties moved the court to take judicial notice of printouts of online state agency records that they submitted to us and that showed Aurora's principal office is located in Virginia. The records also list the same principal office as the business address of all of Aurora's officers and directors.

We find guidance on when to take judicial notice in an older opinion in which we questioned *sua sponte* whether the federal courts had diversity jurisdiction; that case involved an individual plaintiff and a corporate defendant. *See Kaufman v. W. Union Tel. Co.*, 224 F.2d 723, 725 (5th Cir. 1955). The plaintiff alleged that the defendant was "a corporation organized under law with an office and place of business in Dallas, Dallas County, Texas,

2

where service of citation may be had."[1] *Id.* We granted the plaintiff leave to amend her complaint because "[t]he 1950 edition of the Encyclopedia Britannica . . . indicates that [Western Union] is a New York corporation." *Id.* Because the court raised the jurisdictional question *sua sponte* without ordering additional briefing, it must have noticed the relevant facts listed in the encyclopedia. We follow *Kaufman* to the extent it supports the taking of judicial notice of public documents establishing Aurora's citizenship.[2]

Federal Rule of Evidence 201(b)(2) provides that courts "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." We conclude that the accuracy of these public records contained on the Mississippi Secretary of State's and the Virginia State Corporation Commission's websites cannot reasonably be questioned. *See*

---

[1] At the time, the federal diversity statute defined a corporation's citizenship according to the location of its principal place of business. *See Firemen's Ins. Co. of Newark, N.J. v. Robbins Coal Co.*, 288 F.2d 349, 350 (5th Cir. 1961).

[2] Our holding is also consistent with the decisions of the majority of circuits that have considered whether judicial notice can be used to resolve jurisdictional questions on appeal. *Compare Wallace v. Media News Grp., Inc.*, 568 F. App'x 121, 123 n.2 (3d Cir. 2014) (taking judicial notice of a corporation's state of incorporation and principal place of business and holding that diversity jurisdiction existed), *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 974 (11th Cir. 2002) (taking judicial notice of fact that no plaintiffs "st[ood] to recover more than $75,000 in actual damages from th[e] litigation" and remanding to state court), *Caffery v. N.Y. Cent. R.R. Co.*, 324 F.2d 711, 712 (2d Cir. 1963) (taking judicial notice of the defendant's principal place of business and dismissing for lack of jurisdiction), *Berkowitz v. Phila. Chewing Gum Corp.*, 303 F.2d 585, 587-88 (3d Cir. 1962) (taking judicial notice of the plaintiff's appointment as guardian ad litem rather than general guardian, and because relevance of guardian ad litem status to diversity jurisdiction required further fact-finding, remanding for further consideration of jurisdictional issue), *and Town of Bethel v. Atl. Coast Line R.R. Co.*, 81 F.2d 60, 60-61, 61 n.1 (4th Cir. 1936) (taking judicial notice of state statutes to determine citizenship of company and dismissing for lack of jurisdiction), *with Penteco Corp. Ltd. P'ship—1985A v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1522 n.2 (10th Cir. 1991) (refusing to take judicial notice of document showing that diversity jurisdiction did not exist). We have also taken judicial notice of a county appraisal, which raised further doubt that the amount-in-controversy requirement was satisfied in that case, and remanded for further consideration of the jurisdiction issue. *Statin v. Deutsche Bank Nat'l Trust Co.*, 599 F. App'x 545, 547-48 (5th Cir. 2014) (per curiam).

*Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (denying petition for rehearing en banc and explaining that panel took judicial notice of information contained on the Texas Council on Sex Offender Treatment website).

From those records, we discern two relevant facts. First, Aurora's principal office is located in Manassas, Virginia. Second, all of Aurora's corporate officers have an office in Virginia. The principal place of business is "where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). Based on these facts, as confirmed by the parties' joint stipulation, we find that Aurora's principal place of business is in Virginia. Because Swindol is a citizen of Mississippi and Aurora is a citizen of Delaware and Virginia, we have jurisdiction to consider Swindol's appeal.

Finally, we exercise our discretion to grant Swindol's motion for leave to amend under Section 1653 because the judicially noticed documents persuade us that the parties are completely diverse. Consequently, the complaint "is hereby deemed to have been amended to incorporate the additional allegations of citizenship." *Firemen's Insurance*, 288 F.2d at 350.

\* \* \*

Having concluded that we have jurisdiction, we now turn to the issues surrounding certification. We may certify an unsettled question of state law to a state's highest court when that court has a procedure permitting such questions to be posed. *See* 17A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 4248 (3d ed. 2015) (noting that "[c]ertification first came to public attention" in the 1960 Supreme Court decision, reviewing a Fifth Circuit opinion, of *Clay v. Sun Ins. Office Ltd.,* 363 U.S. 207 (1960)). Mississippi has such a procedural rule. *See* MISS. R. APP. P. 20. We follow the guidelines of that rule in presenting this question to the Mississippi Supreme Court.

No. 14-60779

CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE MISSISSIPPI SUPREME COURT, PURSUANT TO MISSISSIPPI RULE OF APPELLATE PROCEDURE 20.

TO THE MISSISSIPPI SUPREME COURT AND THE HONORABLE JUSTICES THEREOF:

## STYLE OF THE CASE

The style of this case is *Swindol v. Aurora Flight Sciences Corp.*, No. 14-60779, in the United States Court of Appeals for the Fifth Circuit. The case is on appeal from a judgment of the United States District Court for the Northern District of Mississippi. Federal jurisdiction is based on diversity of citizenship.

## STATEMENT OF FACTS

Swindol worked for Aurora Flight Sciences Corporation in Mississippi. He parked his car in Aurora's parking lot with a firearm locked inside. Aurora's managers learned about the firearm and fired Swindol later the same day for violating a company policy forbidding firearms on company property. Aurora then convened a plant-wide meeting during which its human resources manager told employees that Swindol was a security risk and instructed them to call the police if they saw him near the facility.

Swindol sued Aurora in United States District Court in Mississippi. He asserted there was diversity jurisdiction under 28 U.S.C. § 1332. He brought state-law claims for wrongful discharge and defamation. Aurora moved to dismiss Swindol's complaint under Rule 12(b)(6). The district court granted the motion, dismissing Swindol's wrongful discharge claim with prejudice and his defamation claim without prejudice.[3] Swindol appealed.

---

[3] The district court dismissed the defamation claim for failure to make sufficient allegations as required by *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). We need not review the dismissal prior to the Mississippi Supreme Court's response to this certification.

No. 14-60779

DISCUSSION

*A. Wrongful Termination Claim*

This court gives *de novo* review to a district court's dismissal under Rule 12(b)(6). *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). Swindol's wrongful termination claim is governed by Mississippi law in this diversity action. *See Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1145 (5th Cir. 1997).

Swindol was terminated because he violated company policy by having a firearm in his vehicle in the company parking lot. He argues that a Mississippi statute prohibits the enforcement of such a policy:

> Except as otherwise provided in subsection (2) of this section, a public or private employer may not establish, maintain, or enforce any policy or rule that has the effect of prohibiting a person from transporting or storing a firearm in a locked vehicle in any parking lot, parking garage, or other designated parking area.

MISS. CODE ANN. § 45-9-55(1). The cross-referenced subsection (2) provides a different rule for certain secured parking lots. Neither party claims that rule applies here. Also relevant is the final section of the statute, subsection (5), which exempts the employer from liability in some circumstances: "A public or private employer shall not be liable in a civil action for damages resulting from or arising out of an occurrence involving the transportation, storage, possession or use of a firearm covered by this section." *Id.* at § 45-9-55(5).

The district court dismissed the wrongful discharge claim, concluding that Mississippi state courts would not recognize discharging an employee for possession of a weapon in his car in a manner compliant with this statute as an exception to that state's employment-at-will doctrine. Because of its ruling on subsection (1), the court did not analyze the effect of subsection (5).

Swindol contends that we should interpret Section 45-9-55 to create a "separate and additional public policy exception to the at-will doctrine" because doing so would fortify Mississippi's public policy supporting the right to bear

6

arms. Such a policy, he argues, is also found in the Mississippi Constitution's provision protecting "[t]he right of every citizen to keep and bear arms." MISS. CONST. art. III, § 12.

We have discovered no Mississippi case law addressing the effect of Section 45-9-55. It is evident that the statute expresses a policy in favor of allowing employees to have weapons in their vehicles in workplace parking areas, with certain exceptions. It is undisputed that Aurora had a firearms policy that is inconsistent with the statute. Those facts still leave as questions whether the firing violated the statute and whether it can be remedied in this action despite the employment-at-will doctrine. We hesitate to intrude into such a seemingly well-settled area of state law. As the Mississippi Supreme Court has held, employment at will means employers may fire employees "for good reason, bad reason, or no reason at all, excepting only reasons independently declared legally impermissible." *McArn v. Allied Bruce-Terminix Co., Inc.*, 626 So. 2d 603, 606 (Miss. 1993) (citation and quotations omitted). The two exceptions to the Mississippi employment-at-will doctrine identified by the *McArn* court over 20 years ago remain the only two recognized so far. Neither *McArn* exception applies here. *See id.* at 607.

Though the Mississippi Supreme Court has not expanded the exceptions after *McArn*, the court has been clear that the legislature has the authority to create new exceptions. *See, e.g., Kelly v. Miss. Valley Gas Co.*, 397 So. 2d 874, 876 (Miss. 1981). In *Kelly*, the court held that the employment-at-will doctrine barred the plaintiff's claims for retaliatory discharge based on his employer's firing him for exercising his statutory right to file a workmen's compensation claim. *Id.* The *Kelly* court based its decision largely on the lack of a statutory provision expressly making it a crime for an employer to discharge an employee for filing such a claim. *Id.* The Mississippi statute here, though, goes beyond just giving rights to employees. It is express that an employer may not *enforce*

a policy prohibiting employees from having weapons in their locked vehicles. *See* § 49-9-55. The issue as we see it is whether that prohibition is sufficient to create an exception to the Mississippi employment-at-will doctrine.

We also conclude we would benefit from the state court's analysis of whether Section 45-9-55(5) bars this suit. One reading of the subsection is that it only immunizes employers from liability that would arise from complying with the statutory command that there be no policy barring employees from having weapons in their cars. The release from liability that Aurora seeks, though, is from the act of terminating an employee for reasons allegedly inconsistent with the statute. We also find some interpretive assistance in the doctrine that the legislatively adopted title of a bill is an appropriate source of meaning. *Aikerson v. State*, 274 So. 2d 124, 128 (Miss. 1973), *overruled on other grounds by Conley v. State*, 790 So. 2d 773 (Miss. 2001). The legislation that became this statute included in its title the statement that the Act provided "Immunity for Employers with Respect to the Transportation or Storage of a Firearm on Employer's Property." 2006 MISS. LAWS Ch. 450 caption. If immunity applies simply to employer liability arising from the transportation and storage of firearms, it may not apply to an employer's enforcement of a policy prohibiting transportation or storage.

We conclude that these questions are "determinative of all or part of that cause and there are no clear controlling precedents in the decisions of the Mississippi Supreme Court," MISS. R. APP. P. 20(a). Therefore, it is appropriate under state law to pose the questions for certification.

Even when permitted by state law, our own list of factors guides us in deciding whether to certify a question to a state supreme court: (1) "the closeness of the question and the existence of sufficient sources of state law"; (2) "the degree to which considerations of comity are relevant in light of the particular issue and case to be decided"; and (3) "practical limitations of the

certification process: significant delay and possible inability to frame the issue so as to produce a helpful response on the part of the state court." *Williamson v. Elf Aquitaine, Inc.*, 138 F.3d 546, 549 (5th Cir. 1998) (quoting *Fla. ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 274-75 (5th Cir. 1976)). We will apply what we term the *Shevin* factors to this case.

Section 45-9-55 clearly expresses a public policy prohibiting employers from barring employees from possessing firearms in the manner the plaintiff claims he did. Yet there are no state-law authorities to guide us in deciding how this statute affects the employment-at-will doctrine. Mississippi state courts have not identified any exceptions to the doctrine beyond those in *McArn*. That consistency raises compelling comity interests that stay our hand from adding an exception in federal court even were we to decide an exception had been statutorily created. The Mississippi Supreme Court is the only court that can definitively decide whether the well-settled *McArn* doctrine has been affected by Section 45-9-55. Though there may be unknown problems caused by delay, there is no difficulty in framing the question to the court.

We also note that this issue is not unique to the present appeal. Another panel of this court recently issued an opinion discussing the effect of the same statute on similar claims. *See Parker v. Leaf River Cellulose, L.L.C.*, No. 15-60034, 2015 WL 4523743 (5th Cir. July 27, 2015). In light of our certification of this question, the mandate in *Leaf River* has been held pending the Mississippi Supreme Court's response to this certification.

We hold that the *Shevin* factors justify our certifying the question.

## QUESTION CERTIFIED

Whether in Mississippi an employer may be liable for a wrongful discharge of an employee for storing a firearm in a locked vehicle on company property in a manner that is consistent with Section 45-9-55.

We do not mean the Mississippi Supreme Court must only reply to the precise question certified. The answer provided by that court will help decide the issue on appeal in this case. Under Mississippi Rule of Appellate Procedure 20(d), the Mississippi Supreme Court will notify this court what it requires and in what form from the record of the case.

This panel retains cognizance of the appeal in this case pending the response from the Mississippi Supreme Court.

QUESTION CERTIFIED TO THE MISSISSIPPI SUPREME COURT.